**Cite as: Opinion No. 94-050 (October 5, 1994) (unpublished)**

JUVENILE ASES ) UBLIC GENCIES E )
DEPARTMENT OF JUVENILE SERVICES MAY NOT ENTER
BINDING AGREEMENT WITH PRIVATE GROUP TO DIVEST
DISCRETION OVER ADMISSIONS TO VICTOR CULLEN CENTER

October 5, 1994

*The Honorable John W. Derr*
*Maryland Senate*

*Mr. Joseph Newman*
*Deputy Secretary of Juvenile Services*

You have each requested our opinion whether the Department of Juvenile Services has authority to enter into an agreement with a neighborhood association to restrict the admission criteria for the Victor Cullen Center.

For the reasons stated below, although the Department may consult with neighborhood groups, take their views into account in decision-making regarding admission criteria for the Victor Cullen Center, and state its intention not to alter existing criteria, the Department may not enter an agreement that purports to restrict the Department's discretion over the operation of the Center. In particular, the Department may not contract away the discretion that is vested in it by law to change certain aspects of the contract under which the Center is operated.

## I

### Background

The Victor Cullen Center, located in Sabillasville, Frederick County, is a residential facility for delinquent youth. Pursuant to a procurement contract with the Department of Juvenile Services, a private corporation called Youth Services International, Inc., ("YSI") operates the Center.

As Deputy Secretary Newman described the situation in his letter requesting an opinion, "because of concerns expressed by some neighbors, [the Department] amended its contract with YSI to specifically limit the types of youth who would be served there." Under the contract as amended, the general admissions criterion is simply "males between 14-20 years of age who have committed a delinquent act before their 18th birthday ...." However, eight categories of offenders are excluded, including youth who have committed certain serious offenses, like murder or rape.

Recently, according to Mr. Newman, "citizens asked if the Department would also enter into a separate, identical agreement with a neighborhood association to limit the types of offenders who could be sent to Victor Cullen." Senator Derr observed that "it is reasonable to request that an

agreement, or at least a strongly-worded letter of intent, be provided to these citizens. This could go a long way in alleviating their fears" that more violent offenders would be placed at the Victor Cullen Center in the future.

## II

### Analysis

The Department operates the Victor Cullen Center pursuant to statutory authorization. Article 83C, §2-117 of the Maryland Code. The statute affords the Department broad discretion in the operation of the Center, including the authority to contract out the operation of the facility to a private agency. *See* Article 83C, §§2-114 and 2-118. The Department has exercised that statutory option through its contract with YSI.

The contract with YSI was subject to the State Procurement Law. *See* §11-202 of the State Finance and Procurement ("SF") Article, Maryland Code. Under the Procurement Law, the contract with YSI was required to contain a clause providing for the "unilateral right of the State to order in writing ... changes in the work [under the contract], if the changes are within the scope of the procurement contract." SF §13-218(a)(6).

YSI's "work" at Victor Cullen depends in part on the types of offenders who are admitted there. That is, some types of offenders might present different security, custodial, or medical needs than others; hence, YSI's operational responsibilities might change, depending on the nature of the admission criteria. Under the Procurement Law and the required clause appearing in its contract with YSI, the Department has the discretion to alter the admission criteria and so change the exact nature of YSI's work, so long as the change is within the scope of the original contract.

If the Department were to agree with a neighborhood association that it would never amend the admissions criteria so as to authorize the admission of offenders who are now excluded, the Department would be contracting away discretion that it has been given by law. Such an action would be inconsistent with a bedrock principle of administrative law, summarized in a prior opinion of this office as follows: "[N]o governmental agency can, by contract or otherwise, suspend or surrender its functions, nor can it enter into any contract which will amount to an abdication of its legislative powers and duties." Opinion No. 76-64, at 4 (April 26, 1976) (unpublished). *See also* 73 *Opinions of the Attorney General* 295, 302 (1988) ("administrative agencies cannot, in the absence of express legislative authorization, delegate powers or functions, particularly those requiring the exercise of discretion or judgment, to others").

Although a neighborhood group undoubtedly reflects the views of a segment of the public, it does not have a duty, as the Department does, to take account of all of the policy factors that go into a discretionary judgment: "This nondelegation doctrine arises largely from concern for the loss of public accountability that would result from the relinquishment by an administrative agency of its powers and functions to a private entity." 73 *Opinions of the Attorney General* at 302. This limitation on the power of administrative agencies to delegate to private persons is a corollary of the

broader principle that limits the Legislature itself in delegating authority: "[D]elegations of legislative authority to private entities are strictly scrutinized because, unlike governmental officials or agencies, private persons will often be wholly unaccountable to the general public." *Board of Trustees v. City of Baltimore*, 317 Md. 72, 94, 562 A.2d 720 (1989). *See* Kenneth Culp Davis and Richard J. Pierce, Jr., I *Administrative Law Treatise* §26, at 72 (3d ed. 1994); Note, *The State Courts and Delegation of Public Authority to Private Groups*, 67 Harv. L. Rev. 1398, 1408 (1954).

### III

### Conclusion

In summary, it is our opinion that the Department of Juvenile Services may not enter an agreement with a private group that would purport to bind the Department not to exercise discretion that it has by law to change the admissions criteria for the Victor Cullen Center.  However, there is no legal bar to the Department's expressing its intent to refrain from exercising its discretion in a specified way.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions & Advice*